ATLANTA CONSOL. ST. RY. CO. v. SOUTHERN BELL TELEPHONE &
TELEGRAPH CO.

(Circuit Court, N. D. Georgia. March 14, 1901.)

No. 1,282.

ACTIONS—NEGLIGENCE—RIGHT OF JUDGMENT DEFENDANT TO RECOVER OVER.
    A judgment was recovered against an electric street-railroad company
for damages for causing the death of the plaintiff's husband, who was
killed by receiving an electric shock from a telephone wire which he was
required to handle in the course of his work as an employé of the tele-
phone company; the complaint in the action alleging that the charge of
electricity which killed the deceased was received from a feed wire of
defendant, which it negligently permitted to cross and rest upon the
telephone wire. Having paid the judgment, the railroad company
brought an action to recover over against the telephone company, alleg-
ing that the crossing of the wires was due to the negligence of the latter
company. *Held*, that such action could not be maintained, since the judg-
ment upon which it was based was necessarily recovered upon an adjudi-
cation that the railroad company had been guilty of actual and positive
negligence, which rendered it at least a joint tort feasor, and precluded
it from recovering over.

At Law. On demurrer to declaration.

T. A. Hammond and Payne & Tye, for plaintiff.

Dorsey, Brewster & Howell and Burton Smith, for defendant.

NEWMAN, District Judge. Mrs. Susie A. Owings brought suit
in the city court of Atlanta against the Atlanta Consolidated Street-
Railway Company. The declaration in her case against the con-
solidated company, being quite brief, is given in full, as follows:

"The petition of Susie A. Owings respectfully shows that the Atlanta Con-
solidated Street-Railway Company, a corporation of said county, has injured
and damaged your petitioner in the sum of fifteen thousand dollars, for that
heretofore, to wit, on the sixth day of September, 1893, her husband, the late
A. Y. Owings, was an employé of the Southern Bell Telephone & Telegraph
Company, a corporation owning and operating a system of telephones in and
around the city of Atlanta, in said county; that on the said day it became his
duty, as such employé, to assist in relieving some trouble in a telephone
maintained by said latter company in the club house of the Piedmont Club,
which trouble prevented the telephone from doing its work properly; that in
the performance of such duty it became necessary for him to ascend, and he
did ascend, a pole of said telephone and telegraph company situated within
the grounds of the Piedmont Exposition Company. about seventy-five feet
north of the bridge which runs from near the entrance of said grounds to
the grand stand, and about midway between the grand stand and the west-
ern inclosure of said grounds; that the purpose for which he made said
ascent was to test the condition of the wires supported by said post, and
thereby discover the cause of said trouble; that in testing these wires he
had to cut, and did cut, the call wire which ran from said club house to the
office of said telephone and telegraph company, and which rested upon a
glass insulator fastened in the top of a beam which was attached transversely
to said pole; that this wire was cut at a point one or two feet south from
the pole; that in the cutting of it, and in all matters relating thereto, he ex-
ercised the greatest care; that, nevertheless, upon the severing of such wire
he received from it a heavy charge of electricity, which burned the flesh from
one of his arms between the wrist and elbow, and threw him from the pole,
and killed him; that the charge of electricity which thus entered the body of
the deceased and ended his life was received by said club house call wire from

a feed wire of the defendant, which issued from its power house, and was used to supply an electric current to one of its trolley wires, the cars of defendant being operated by electricity; and that this feed wire was at the time aforesaid negligently and carelessly permitted by the defendant to rest upon and be in immediate contact with the said call wire, which was stretched upon an insulator on a beam fastened across a post of the said telephone and telegraph company which stands at the east end of the bridge over the track of the Richmond & Danville R. R. Co. near said power house, the point of contact between the said wires being about fifteen feet south of said post. Your petitioner further shows that her said husband was, before and at the date of his death, a man of robust health, thirty-six years of age, with the expectation of living thirty years longer, and had a capacity to earn during this period the sum of five hundred and fifty dollars each year. Wherefore your petitioner prays that process may issue requiring said defendant to be and appear at the next November term of said court to answer your petitioner's complaint."

After this suit was instituted, the Consolidated Street-Railway Company, through its counsel, gave notice to the Southern Bell Telephone & Telegraph Company of the institution of the suit, inviting them to come in and defend, as it would claim indemnity from the Bell Telephone & Telegraph Company, claiming that the latter company was responsible for the injury to and the death of the plaintiff's husband. There was a verdict and judgment for the plaintiff. The Atlanta Consolidated Street-Railway Company then gave the Telephone and Telegraph Company the further notice that motion for new trial had been made, and stating that the purpose of the Consolidated Company was to give the Telephone and Telegraph Company an opportunity to come in and assist in getting a new trial in the case. The new trial was denied, and the case was carried to the supreme court, and the judgment of the lower court affirmed (25 S. E. 379). The Consolidated Street-Railway Company paid the amount of the judgment, and thereupon brought suit against the Telephone and Telegraph Company, claiming that it was liable over to it for the amount of Mrs. Owings' recovery. This latter suit was removed by the defendant, being a citizen and resident of another state, to the circuit court. It is now heard on demurrer filed by the Telephone and Telegraph Company to the Consolidated Company's declaration.

The contention for the plaintiff in the present suit is that the Telephone and Telegraph Company, by the negligent management of its wire, called a "call wire," allowed it to come in contact with the plaintiff's wire, called a "feed wire," and thereby caused the electric current to be diverted to the call wire, which caused the death of Owings. If the allegations of the declaration in the present case could be taken alone, it is quite clear that it would not be subject to demurrer; but it must be taken in connection with the declaration in the case of Mrs. Owings against the Consolidated Company, and the result of that suit. That declaration, in fact, is attached to and made a part of this case. The present suit does not present such a case as has often been before the courts, where there is a peculiar duty owing by one to a person injured or killed, and a recovery had by reason of that duty, and a subsequent suit for liability over as against the person whose negligence really caused the injury or death. The case of the liability of a city, to persons pass-

ing along its streets, for injuries received from falling into a pit on or along the side of the street, and of liability over of the person really responsible for the defective condition of the street, is a familiar instance. City of Chicago v. Robbins, 2 Black, 418, 17 L. Ed. 298; Western & A. R. Co. v. City of Atlanta, 74 Ga. 774; Faith v. City of Atlanta, 78 Ga. 779, 4 S. E. 3. The case of the liability of a railroad company as a carrier to persons for whom it undertakes to safely transport and deliver goods, and of liability over of the person really responsible for the circumstances which occasioned the loss or nondelivery, is another instance. Hutch. Carr. (2d Ed.) § 427. But in the first suit in this case the plaintiff, Mrs. Owings, passed over the person who owed the peculiar obligation to her husband, and sued the person she claimed was guilty of the real negligence which caused the death.

It is well-settled law that one of two joint wrongdoers cannot have contribution from the other. This is fully recognized in the cases of City of Chicago v. Robbins, Western & A. R. Co. v. City of Atlanta, and Faith v. City of Atlanta, supra. While, perhaps, in some instances, where liability over has been sustained, there was something in the nature of negligence on the part of the person originally sued, it was only so because of the peculiar obligation owing to the injured person, or to a class of which he was a member. The city allows a person engaged in erecting a building fronting on one of its public streets to dig into the sidewalk for the purpose of constructing an area. In such case the owner of the property agrees, impliedly at least, that he will safely guard the excavation until the work is completed, and the city has the right to expect the performance of this duty. But as to persons passing along the street, the city is under special obligation to see that the sidewalk is safe and free from danger. If, therefore, the pit is left unprotected, the city becomes liable to a person who may, while in the exercise of due care, step into it and receive injury, and no question exists as to the liability over of the person who has the pit dug. Anything in the nature of negligence which can be charged to the city is not of such a character as can be set up to bar a recovery as against the real wrongdoer. If, however, there should be an instance where the city and an individual or private corporation were doing a piece of work jointly on the streets, and the point at which the work was being done was left in such defective condition that persons or property were injured, and a recovery was had against the city, there could be no liability over because there would be concurring and mutual negligence on the part of the city and its associate in the particular piece of work. In the case at bar it is necessary to ascertain from the pleadings whether or not there was such actual negligence on the part of the consolidated company as bars recovery under this well-recognized rule of law. As has been stated, Mrs. Owings did not bring suit against the company which owed a special obligation to her husband to protect him while engaged in his work, but went in her suit against the other company, the Consolidated Company, alleging that its "feed wire was * * * negligently and carelessly permitted

\* \* \* to rest upon and be in immediate contact with the said 'call wire' of the Telephone and Telegraph Company," and upon this allegation she recovered, and recovered, not because the Consolidated Company was under any peculiar duty to protect her husband from the electric current, but necessarily because it was an act which was dangerous to the public, and the liability of the Consolidated Company would have been the same to any one who might have come in contact with the current thus permitted to be diverted and turned away from its proper and harmless channel. The declaration in the present case of the Consolidated Company against the Telephone and Telegraph Company alleges that the former company was free from fault, and that the latter company was really guilty of the actual negligence in the transaction. It is alleged that the call wire was not insulated, but was what is called a "naked wire," and that it was so placed as to run underneath and against the Consolidated Company's feed wire, which was insulated, and that the call wire had worn through the insulation on the feed wire where it came in contact with it, and thereby allowed the electric current to be diverted. While it is true, as has been remarked, that, if the allegations in this declaration were taken alone, the declaration would not be subject to demurrer, yet, when taken in connection with the fact that recovery was had against the Consolidated Company for such character of negligence as made it liable to the public, an entirely different case is presented. The fact that Mrs. Owings could recover against the Consolidated Company for the death of her husband under the circumstances, that company being under no special obligation or peculiar duty to Owings, to my mind necessarily adjudicates and determines the question of such negligence on the part of the Consolidated Company as would prevent a recovery against the Telephone and Telegraph Company. The very most that can be said, taking this entire case together,—the declaration in the former suit and in this suit,—is that they were joint wrong-doers, and that by their mutual fault these wires came in contact and this dangerous current was diverted. A recovery could not have been had by Mrs. Owings against the Consolidated Company unless it was guilty of such real, actual negligence as would prevent, under the authorities, a recovery against one guilty also of wrong in the same transaction. The case of Gray v. Gaslight Co., 114 Mass. 149, on which counsel for the Consolidated Company place much reliance, is, when properly considered, not an authority in their favor. In that case the gaslight company, without the permission of Gray, attached a telegraph wire to Gray's chimney. In a gale of wind some time afterwards, the chimney was blown down, and fell into the street, injuring a horse and wagon. Brown and Chick, the owners of the horse and wagon, brought suit against Gray, as owner of the building, for the damages they sustained, caused by the defective condition of the chimney. Gray gave the gaslight company notice of the suit, stating that the injury was caused by the wire pulling down the chimney, and that he should look to the gaslight company for indemnity, and requested them to come in and defend the suit. Gray afterwards settled with Brown and Chick,

and brought an action to recover the sum so paid, with expenses, from the gaslight company. The jury found that the amount of the settlement was reasonable, and that the plaintiff acted prudently in paying it, so the question was as to the liability over of the gaslight company. Two brief quotations from the opinion will show the view taken of the case. And, first:

"The wrongful act of the defendant caused the chimney, which was adjacent to the highway, to become unsafe and liable to fall by reason of the strain of the wire, and this condition was continued for a considerable period, and existed at the time of the injury. The owner of a building, under his control and in his occupation, is bound, as between himself and the public, to keep it in such proper and safe condition that travelers on the highway shall not suffer injury,"—citing authorities.

Again:

"It is the duty of the owner to guard against the danger to which the public is exposed, and he is liable for the consequences of having neglected to do so, whether the unsafe condition was caused by himself or another."

After stating the rule that one joint tort feasor cannot have indemnity or contribution from another, and holding that it was inapplicable, the opinion proceeds:

"The numerous cases in our own reports are analogous, where towns, having been held liable for an unsafe condition of the highway, have recovered from the person whose acts caused the unsafe condition. The reasons given in these cases are conclusive on this point."

It will be perceived that the foregoing case was treated as analogous in principle to that of a recovery by a traveler against a town or city for the defective condition of the highway, and recovery over by the town or city against the person really responsible for the nuisance or defective condition. The decision is, in effect, like the case heretofore cited from the supreme court of the United States and the two cases from the supreme court of Georgia. As has been stated, that which controls this case is the fact appearing in the record that a recovery was had against the Consolidated Company for original and actual negligence on its part. The case, as presented now by the pleadings, shows an adjudication of such effective and positive negligence on the part of the Consolidated Company as will prevent it from recovering over, even assuming that the Telephone and Telegraph Company was also guilty of negligence. The demurrer will be sustained.