SNYDER ICE, LIGHT & POWER CO. v. BOWRON et al.

(Court of Civil Appeals of Texas. Amarillo. April 19, 1913.)

1. TRIAL (§ 252*) — INSTRUCTIONS — CONFORMITY TO EVIDENCE.

In a telephone lineman's action against an electric light company for injuries caused by contact with a defectively insulated electric light wire, where there was no evidence that the lineman had been warned of the danger or the condition, an instruction that if he had previously been warned not to come in contact with electric light wires, and was negligent in so doing, he could not recover, was properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

2. TRIAL (§ 251*)—ACTIONS FOR INJURIES—INSTRUCTIONS — CURE BY OTHER INSTRUCTIONS.

In a telephone lineman's action against an electric light company for injuries from a defectively insulated electric light wire, defendant, by its answer, brought in the telephone company and alleged that the condition of its wire was due to a telephone cable which sagged and came in contact with its wire, but did not allege that such contact was contributory negligence on the part of plaintiff. The court charged that if plaintiff, by any knowledge of the proximity of the electric light wire to the telephone cable, failed to use that care which an ordinarily prudent person would have exercised, and if such failure contributed to cause his contact with the uninsulated wire, to find for defendant, notwithstanding its negligence; that if he knew the danger to which he might be exposed in ascending the pole, and if in so doing he did not act as an ordinarily prudent person would have done, and was thereby guilty of negligence, he could not recover, and to consider all the circumstances in evidence tending to throw light on his acts. A requested instruction that if he caused the cable to come in contact with the electric wire, and if he had knowledge of the danger of such contact, or had been warned not to come in contact with electric wires, and was negligent in so doing, he could not recover, was refused. There was no evidence that he had been warned of the danger or conditions. Held, that the instruction submitted an issue not pleaded or proven, and was properly denied.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

3. APPEAL AND ERROR (§ 742*)—BURDEN OF SHOWING ERROR.

In an action for injuries due to an electric shock causing a lineman to fall, an assignment that the court erred in admitting a physician's testimony as to the permanent effects of an electric shock, because he was not qualified, would be overruled, where the bill did not show any testimony by him as to any permanent effects, and the statement under the assignment showed that, in his opinion, plaintiff's only permanent injury was to his arm, broken from the fall.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

4. WITNESSES (§ 282½*) — EXAMINATION — REPETITION OF QUESTION.

An assignment of error complaining of the exclusion of a question asked a witness on cross-examination as to whether he had not been frequently drunk, which the bill stated he would have answered affirmatively, would be overruled, where the qualification of the bill showed that he had previously repeatedly denied that he got drunk frequently; it being unlikely that he would have answered the question as claimed.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 928, 990–992; Dec. Dig. § 282½.*]

5. TRIAL (§ 260*) — INSTRUCTIONS — CURE BY OTHER INSTRUCTIONS.

The refusal of instructions containing correct principles of law, which were sufficiently presented by the general charge, was not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

6. NEGLIGENCE (§ 89*)—IMPUTED NEGLIGENCE —EMPLOYER AND EMPLOYÉ.

A telephone lineman, injured by contact with a defectively insulated electric light wire, is not chargeable with the telephone company's knowledge of such condition or its negligence in causing it.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 130–137; Dec. Dig. § 89.*]

7. ELECTRICITY (§ 16*) — INJURIES — CONCURRENT NEGLIGENCE—LIABILITY.

The failure of a telephone company to furnish its lineman a reasonably safe place in which to work did not relieve from liability an electric light company whose wrongful or negligent acts concurred with those of the telephone company to render such place unsafe.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9; Dec. Dig. § 16.*]

8. APPEAL AND ERROR (§ 1040*)—HARMLESS ERROR—SUSTAINING EXCEPTION TO ANSWER.

In a telephone lineman's action against an electric light company for injuries caused by contact with a defectively insulated electric light wire, the sustaining of an exception to a paragraph of the answer bringing in the telephone company and alleging that the condition of the wire was due to its negligence did not prejudice the electric light company, so far as its liability or nonliability to plaintiff was concerned, where the case was fully developed on the question of whether the telephone company's negligence was the sole cause of the injury.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. § 1040.*]

9. INDEMNITY (§ 13*) — RECOVERY OVER AGAINST WRONGDOER—PLEADING.

In a telephone lineman's action against an electric light company for injuries caused by contact with a defectively insulated electric light wire, a paragraph of the answer, alleging that the condition of the wire was due to the negligence of the telephone company in permitting a telephone cable to sag and come in contact with defendant's wire, but not alleging whether defendant's wires were placed before or after the cable was placed, or before or after its sagging condition, and not showing that defendant had no knowledge of the condition of its wire before the injury, did not show any right to recover over against the telephone company; and hence an exception thereto was properly sustained, since at most it merely showed a case of concurrent negligence.

[Ed. Note.—For other cases, see Indemnity, Cent. Dig. §§ 29–35; Dec. Dig. § 13.*]

10. ELECTRICITY (§ 16*)—LIABILITY FOR INJURIES—INSULATION OF WIRES.

It was the duty of an electric light company, of which it could not divest itself, to have its wires insulated at a place where persons whose duties called them in proximity thereto would be exposed to injury.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9; Dec. Dig. § 16.*]

11. DAMAGES (§ 62*)—DUTY OF INJURED PERSON TO REDUCE DAMAGE.

Where there was no question but that an injured person's arm was given proper treatment at the time of the injury, ordinary care on his part to reduce the consequences of defendant's negligent act did not require him to have his arm broken over, in order to take out the stiffness by breaking up the cartilaginous mass around the joint; and hence evidence that this could be done was properly excluded.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 119–131; Dec. Dig. § 62.*]

Appeal from District Court, Scurry County; Jno. B. Thomas, Judge.

Action by Monte Bowron against the Snyder Ice, Light & Power Company. From a judgment in favor of plaintiff and the cross-defendant Scurry County Telephone Company, the original defendant appeals. Affirmed.

Higgins, Hamilton & Taylor and Arthur Yonge, all of Snyder, for appellant. Beall & Beall, of Sweetwater, Fritz R. Smith and Perkins & Perkins, all of Snyder, and M. J. Thornton, of Gail, for appellees.

HUFF, C. J. The appellee Monte Bowron sued appellant, the Snyder Ice, Light & Power Company, in the district court of Scurry county for damages which it is alleged he sustained while in the employment of the appellee Scurry County Telephone Company, as lineman, and while in the discharge of his duties as lineman in repairing one of the telephone company's wires at the southeast corner of the public square, in the town of Snyder, known as the Ficas corner. It is alleged: After the telephone company constructed its system of telephone in the town the appellant put in its electric light plant, and that it negligently placed its light poles and wires in such close proximity to the poles and wires of the telephone company at the Ficas corner that appellee and other employés would necessarily come in close proximity thereto in ascending and descending said phone poles, and in adjusting, repairing, and fixing the phone wires;

and in fact said electric wires and cables of appellant at such place were so constructed that one of its high-power wires, carrying about 2,300 volts, passed north and south immediately on the west side of said phone pole, and a like wire or cable 18 or 20 inches east thereof; that appellant, on the date of the injury, had put in a day current. "That on or about the 28th day of May, 1911, plaintiff, while engaged in the discharge of his duties, and in the performance of the same, having been called by his employer to adjust and repair one of its phone wires having a connection at said Ficas corner, ascended said telephone pole at said corner, and while engaged in tracing a dead wire at said place in order to put the same in operation, and not knowing that defendant's high-volted wire on the east of said telephone pole at the point where plaintiff received his injury was uninsulated or defectively insulated, but believing same to be safe and in proper condition, as it was the duty of defendant to so keep it, came in contact with said wire at said uninsulated place thereon and was severely shocked and burned by a current of electricity received therefrom, rendering plaintiff helpless and senseless, and causing him to fall to the ground below with great violence, a distance of about 20 or 25 feet. Plaintiff avers that said wire from which he received said stroke was carrying at the time about 2,300 volts of electricity, which could not be seen by plaintiff, and which, through the negligence of defendant, was not indicated by defendant in any respect, as it was its duty to do, and which it was proper to do, and plaintiff had no way or means of ascertaining or knowing at said time that same was charged with electricity."

He further alleged that "defendant, at the time plaintiff was injured, and for several weeks prior thereto, knew of the improper construction of its said light system at said Ficas corner, and of the uninsulated condition of the said electric wire or cable at the said Ficas corner, and knew, or by the use of ordinary care could or would have known, of the dangerous condition of the same, and was negligent in permitting said wire to become and remain uninsulated and in such close proximity to said telephone system at said Ficas corner, knowing as it did, and was bound to know, that plaintiff and other employés of said telephone company would necessarily have to approach near to and in close proximity thereto in the discharge of their duties, and might get killed or seriously injured by the electricity carried on said wire." He further alleges the injuries received by his fall occasioned by the negligence of appellant, as above set out.

Appellant answered by general denial, that the appellee knew the condition of the wires and assumed risk, contributory negligence, in that he acted in an absent-minded, unthoughtful, and careless manner, and in so acting caused a circuit of electricity with members of his body by grounding an electric current in a careless manner, and did not act with care, etc.; and, further, that appellee knew the close proximity of his company's wire and posts to that of appellant's, and that it was practically uninsulated on the top of one wire, or should have known of the same by the exercise of ordinary care and diligence, and therefore guilty of contributory negligence.

The appellant, in paragraph 7 of its answer, brought in the Scurry County Telephone Company, charging it with negligence, and asking to recover over against it. This paragraph will be set out more in detail hereafter.

[1, 2] By the first assignment appellant urges that the court erred in refusing to give specially requested instruction No. 2. It is asserted that the court failed in the main charge to submit the defense of appellant, and therefore the special charge should have been given. This requested instruction is, in substance, that if appellee Bowron caused the cable to come in contact with the electric light wire, and that he had knowledge of the danger of such contact, or had previously been warned not to come in contact with a light wire, and if he was negligent in so doing, he could not recover. It is not specifically alleged that the causing of the cable to come in contact with the electric wire was an act of contributory negligence on the part of Bowron. This particular situation as to a certain bow in the cable, which is alleged as the cause of the uninsulated condition of the wire, is alleged as an act of negligence against the telephone company. The court, in his main charge, instructed that if the jury found "that the plaintiff, either in going upon the telephone pole at the time he did go, or by reason of his knowledge of the proximity to the wire of the light company to the telephone cable or wire, if he had such knowledge, or in the position in which he placed himself while on said pole, or in anything that he did, or omitted to do, he failed to use that degree of care which an ordinarily prudent person would have exercised under the circumstances," etc. If such failure of care caused or contributed to cause him to come in contact with an uninsulated wire of appellant, by reason of which he fell, to find for appellant, "notwithstanding that you may find that the defendant was also guilty of negligence which directly or proximately contributed to cause the injury to plaintiff, if any." And in connection with the above charge the court also told the jury that if Bowron, in ascending, knew of the danger to which he would or might be exposed, although it was one of his duties, by reason of his employment, to ascend the pole, and

if, ascending the pole with such knowledge, he did not act as an ordinarily prudent person under such circumstances would have done, and that such act contributed to his injury, and if he ascended the pole with such knowledge of the situation and surroundings as he had, if any, he failed to exercise ordinary care for his safety and was thereby guilty of negligence, which caused or contributed to cause his injury, "then if you find plaintiff was guilty of negligence in any of these particulars, plaintiff could not recover though you might believe the electric wire was uninsulated as alleged, and that the defendant was negligent in not having said wire properly protected." The court further instructed the jury, in determining whether or not "the plaintiff was himself guilty of negligence in ascending said pole, or his action while on said pole, you will consider all the facts and circumstances in evidence which tend to throw light upon these questions." Appellant cites us to no evidence in the record showing that Bowron was warned of the danger or conditions. In the absence of such evidence, it would have been error for the court to have submitted such an issue to the jury. The court submitted the question whether or not appellee knew of the danger from the situation and condition of the wires and cable. We think he submitted the issues as pleaded in a clear and succinct form, and the jury could not have failed to understand the issues so submitted. We do not believe the charge requested would have added anything to the charge of the court, but would rather have had a tendency to confuse them. The charge given was applicable to the facts alleged and proven. The requested charge submitted facts not proven and some facts not alleged, as contributory negligence, but contained only appellant's alleged cause against the telephone company.

[3] The second assignment presents the court's ruling upon appellant's "motion to exclude the testimony of Dr. Scarborough as to the permanent or probably permanent effects of an electric shock received by the plaintiff, for the reason Dr. Scarborough testified he had no experience in treating shocks from currents of electricity." Appellant, in its bill, does not set out the testimony of the doctor, in which he testified to any "permanent or probably permanent effects of an electric shock." It does not show what he testified on that point. Appellant does not point out to us where the doctor testified to any permanent or probably permanent effects. The statement under this assignment is, in part, "I will say that I think that the cause of the nervous condition of his system after the injury was because both of his fall and this electrical shock." But his further testimony indicates that in the opinion of the doctor Bowron had recovered from that condition, and the only permanent injury was to his arm, which was broken from the fall.

[4] The third assignment presents the action of the court in refusing to permit Bowron to answer the following question, "Have you not been frequently drunk?" Upon objection, the court sustained the objection, and it is stated in the bill, if witness had been permitted to answer, he would have said: "Yes, sir." The trial judge qualified the bill by stating the record fully shows the testimony of the witness as to his habit of drinking. Upon examination of the record we find that the witness testified: "It is not a fact that I often engage in the excessive use of intoxicating liquors, and I had not done so prior to the time of this injury, nor have I subsequent thereto. No, sir; it is not a fact that I have been drunk frequently." There is at least a page and a half of the record devoted to the examination of this witness with reference to his drinking. It is not at all likely that he would have answered the question as stated in the bill, when he had repeatedly denied that he got drunk frequently. We do not understand the court as certifying that he would have so testified, but he refers us to the record for his evidence on that point. This assignment is overruled.

[5] The fourth, fifth, and sixth assignments complain of the action of the court in refusing special charges 4, 5, and 7. In so far as the charges requested contain correct principles of law applicable to the facts of this case, we think the general charge sufficiently presented them. The requested instructions in many particulars do not present the law applicable to the case and some of the propositions presented in them we regard as not being the law. These assignments are overruled. We do not think any useful purpose will be subserved by setting out the charges and discussing them. We regard the court's charge as an admirable presentation of the law applicable to this case, and as fairly and fully presenting to the jury the questions in the case for their solution.

[6, 7] Appellant's seventh assignment of error is to the action of the court in sustaining the third special exception of appellee Bowron, addressed to the sixth paragraph of the appellant's answer. The special exception is as follows: "Plaintiff further specially excepts to the sixth section of said answer and that part thereof seeking to charge this plaintiff that such notice as the telephone company and its agents may have had as to the uninsulated condition of the defendant light company's wire at and prior to the time plaintiff received his injuries, thereby seeking to charge the plaintiff with such negligence as said telephone company and its other agents may have been guilty of in the construction, operation, and maintenance of its telephone wires and cables up to and prior to the time plaintiff was in-

jured." The exception appears to go to that part of the sixth paragraph of the answer which alleges, among other things: "Said telephone company, through its agents, did have or claimed to have knowledge of such defective insulation in the wire of the defendant light company prior to plaintiff's injury. * * * But the said telephone company and the plaintiff and its agents are guilty of negligence in the construction, operation, and maintenance of its lines of wire, cable, etc., if there is any such negligence." As we understand the exception, it only goes to the knowledge and negligence of the telephone company and its agents with reference to the defective insulation and the construction, etc., of the wires and cables of the telephone company. The court did not, as we gather, strike out all of paragraph 6, but only that part excepted to, and let stand that part charging knowledge and negligence on the part of Bowron, as a reply to his cause of action. We do not think the knowledge of the telephone company and its agents and their negligence should be charged to Bowron and defeat him in his recovery. The telephone company owed Bowron the duty to furnish him a reasonably safe place in which to work, and if it failed to do so, and with knowledge of the condition rendering it unsafe negligently placed him at work thereon, such act would not defeat the appellee's suit against appellant, if it was a joint tort-feasor, whose wrongful or negligent acts concurred with those of his employer; but he would have a right of action against one or both. The negligence of the one will not defeat his recovery against the other, unless the jury found no concurring negligence on the part of appellant proximately causing the injury. The trial court substantially submitted to the jury in the main charge the law above stated.

[8, 9] The eighth and ninth assignments complain of the action of the court in sustaining the exceptions of appellee Bowron and that of appellee Scurry County Telephone Company to the seventh paragraph of appellant's answer, bringing the telephone company into the case and asking a judgment for contribution over against it. This paragraph, claiming contribution, alleges that prior to the injury of Bowron "the telephone company had erected a system of telephone poles, wires, and cables in and upon the streets and other places in the city of Snyder, and that one of its principal and main poles was placed on the street corner known as the Ficas corner, near the southeast corner of the public square, upon which pole was fastened many of the phone wires of said system, and a large cable, 1¼ inches in diameter, of lead or soft metal, in which were numerous small telephone wires, all of which made said cable heavy; that said cable was suspended from a messenger wire, drawn taut by small insulated wires tied onto each; that at the near end of the said posts, on the east side thereof, the cable was sagged in a bow below its level, and below the messenger wire that held said cable up, some 12 or 18 inches, instead of being tied up to within about 3 inches of said messenger wire that held the cable up at other points, and would have held it up to its proper position at this point, except for the negligence of the telephone company in permitting said cable to sag, as aforesaid; that the posts which held the defendant light company's wire were necessarily placed near the posts of the telephone company at the said Ficas corner, and one wire of the light company was on the east side of said posts and one on the west side thereof, and that said wires were placed by the defendant upon a long crossarm and out of reach of an ordinary person engaged in repairing or working upon the wires of the telephone company; but that if the plaintiff was injured, as alleged by him, it was not by reason of any negligence on the part of the light company, but was caused by the negligence of said telephone company permitting its said cable, which was suspended directly over and at right angles with the wire of the light company on the east side of the light posts and phone posts, to sag, and in not tying up said cable to its support, but in permitting same to sag as aforesaid until, if there was any exposed place on the light company's wires, as alleged by plaintiff, it was directly caused by the friction of the said cable on the top of said light wires insulation and the wearing or burning off of a small portion of said insulation on the top of the light company's wire at a point of contact between the phone cable and light wire; and the telephone company and its agent, the plaintiff herein, knew of such faulty construction on the part of said telephone company, and knew of the danger incident thereto, if any, and if there was an exposure of the light company's wire, aforesaid, said telephone company and the plaintiff had notice thereof and full knowledge of the attendant danger of same, if any." It is further alleged the shock to Bowron was conveyed to him through the cable of the telephone company by coming in contact with the wire at the point where the insulation had been rubbed off of the light company's wire by the cable, as above alleged, and that while the cable was charged with electricity, Bowron's wet clothing came in contact with the cable, and he closed the electric circuit by touching some ground wire with some part of his body. It is alleged that Bowron had knowledge and skill in electrical power plants, telephones, etc., and that he and the telephone company knew of the condition of the wire at the time of the injury, and that if any one was directly liable to Bowron it was the telephone company, and the proximate cause of

the injury was due to the negligence of the telephone company.

The court sustained the exceptions to this paragraph of the answer and ordered the telephone company to be dismissed. We do not understand by dismissing the telephone company that that part of the answer, in so far as Bowron is concerned, was stricken out. The facts introduced in evidence appear to have fully gone into the relation and condition of the wires at the time of the injury and with reference to the situation of the cable, and the high-voltage wire. It is shown there were abrasions in the insulation of about one-fourth of an inch in the high-voltage wire of appellant at the post from which Bowron fell. There was a burn on his shoulders and two or three on his back. The evidence further shows the cable of the telephone company bows or sags down near to where this break was in the insulation. The testimony further indicates that such had been its condition for some time previous to the injury of Bowron, and that the manager of the phone company knew of it. The jury had evidence from which they could have found that the cable broke the insulation. The testimony in some particulars negatives the fact that the cable, at the time of the injury, was forced in contact with a high-voltage wire, and that such contact was the cause of the current passing through appellee. We think, however, the evidence is ample to show that appellant was negligent in the particulars charged in the petition, and from the facts so proven the jury were warranted in finding a verdict for Bowron.

[10] It was the duty of appellant to have its wires insulated where persons whose duties called them in proximity thereto would be exposed. That is such a duty as the appellant could not divest itself of. San Antonio Gas & Electric Co. v. Badders, 46 Tex. Civ. App. 559, 103 S. W. 229; Standard Light & Power Co. v. Muncey, 33 Tex. Civ. App. 416, 76 S. W. 931; Citizens' Telegraph Co. v. Thomas, 45 Tex. Civ. App. 20, 99 S. W. 879. The court instructed the jury, if Bowron was injured through the negligence of the telephone company, without negligence on the part of appellant proximately causing the injury and concurring with the negligence of the telephone company, to find for appellant. If there was error in dismissing the telephone company, it did not prevent the appellant from showing, if it could, that the telephone company's negligence was the sole cause of the injury, and that it was not therefore liable. The record indicates the case was fully developed on that point, and that no injury resulted to appellant, in so far as the establishment of its liability or nonliability to Bowron is concerned for the injury received by him. The serious question presented under the plea bringing into the case the telephone company is: Did it, under the allegations, show a right of contribution against the telephone company? The question, in so far as this court is concerned, is a difficult one. Was the sagging of the telephone cable or the bow therein, making an abrasion in the insulation, the primary or active negligence rendering the telephone company liable to appellant? The answer or cross-petition alleges the erection of the telephone posts and the wires and cables thereon, and that appellant's posts which held its wires were necessarily placed near the posts of the telephone company. Was this wire and post placed near to the sagging cable before or after the cable was placed, and before or after its sagging condition? If after, then appellant must have reasonably anticipated that the abrasion would probably occur. It was its duty to insulate its wire, and it was required to use ordinary care to see that its wires, when put in use, were properly insulated and maintained in that condition. This duty was nonassignable, and the fact that the cable was constructed so that it broke the insulation was, or might be, a concurrent act of negligence. We think the cross-petition should have alleged and shown that appellant was not negligent in placing its wires where it was probable they would be rendered dangerous. If, when the wires were placed, the cable was in the condition it was when the injury was done, then the appellant was negligent in so placing them, and could not recover over against the telephone company for an act which its negligence caused. The petition, by its construction, indicates that the telephone posts, wires, and cable, when appellant placed its wires and posts near them, were then constructed, and in the position they were when the damage was done the insulation. There is nothing alleged or shown that appellant did not know of the condition before the injury to Bowron. We believe the allegations should show that it was not guilty of negligence in permitting the wire to remain uninsulated. If the condition of the cable and wire were known to the telephone company, it certainly should have been known to appellant, whose duty it was to maintain its wire in a safe condition. It should not be allowed to say the cable inflicted the damage to the wire; therefore the obligation the law imposed could be and should be shifted to the telephone company. Leaving the cable in the condition it was may or may not have been an act of negligence on the part of the telephone company. If it was in that condition before the wire was placed there, we do not think negligence is shown of the telephone company. If it got in that position after, or was placed there after, it might have been negligence, but we think only concurrent. The active negligence in this case was leaving in an exposed place an uninsulated wire. It may have been the telephone company was guilty in permitting its cable to break the insulation on the wire.

It is equally clear that appellant was guilty in permitting the wire to remain uninsulated. Both these acts may have been the proximate cause of the injury. The court should not, in order to shift the burden from one to the other, compare their conduct and ascertain which of the two was the least guilty. We do not think the appellant alleges a case authorizing contribution from the telephone company. Railway Co. v. Vance, 41 S. W. 167; San Marcos Electric Light & Power Co. v. Compton, 48 Tex. Civ. App. 586, 107 S. W. 1151; Standard Light & Power Co. v. Muncey, 33 Tex. Civ. App. 416, 76 S. W. 931; Atlanta Consolidated Street Railway Co. v. Southern Bell Telephone & Telegraph Co. (C. C.) 107 Fed. 874.

[11] The eleventh assignment complains at the court's action in refusing to permit Dr. Johnson to answer the following question: "Now, regarding the arm, doctor, from your examination of his arm, and from your knowledge of surgery and your experience of 14 years as a physician, is it not probable that the motion could be restored by a proper treatment of setting the arm at this time?" The bill of exceptions shows that the witness would have answered "that by a proper treatment of the arm of the defendant—that is, by breaking up the cartilaginous masses around the joint, without injury to the muscles, bones, or nerves—would take out the stiffness and cause growths to be taken up by the blood, and thereby restore the mobility of the joint in a much greater degree than it has now, if not entirely cure it. In many instances permanent cures are effected, and I, as a physician and surgeon, would adopt that course in this particular case, if permitted by Monte Bowron." Dr. Johnson was present · when the arm of Bowron was set, and he testified that "the injuries were treated as any other surgeon would have done." Dr. Scarborough testified that "the knuckles from the humerus, which is the only bone of the upper arm, to the forearm knuckles, that forms the joint where the fracture, and also the bone that comes in here to make the joint from the lower side, the ulna; it is a fact that the elbow was crushed in there, and those bones that form the elbow joint were crushed. * * * It is a fact that we could not have set the arm in any other manner than that in which we did set it, and bring the bones to anything like their natural position. The condition that that arm was in at that time, we set it in the only way that it could be set. * * * We can feel that the bones of the elbow were all crushed in that joint." The evidence shows that Bowron had three surgeons with him at the time of his injury, and there is no question made as to the treatment given at the time being the proper one. Appellee exercised ordinary care in securing the treatment of his arm. We do not believe the law requires him to go fur-

ther and have his arm broken over. The "cartilaginous mass," "without injury to the muscles, bones, or nerves," would have to be broken, in order to take "out the stiffness." We think such requirement on the part of appellee, in order to relieve the appellant from the consequences of its negligent act, is requiring considerably more than ordinary care. 13 Cyc. 77, and note 62; Railway Co. v. Doyle, 25 S. W. 461; Railway Co. v. Young, 60 Tex. 202. There was no error in refusing the testimony.

The twelfth assignment is overruled. We do not think the letters excluded by the court admissible upon the issues between the appellant and Bowron.

We find no such error in the record as requires a reversal of the case, and it is therefore affirmed.