SAN ANTONIO GAS & ELECTRIC COMPANY v. MINNIE LEE BADDERS ET AL.

Decided May 27, 1907.

**1.—Master and Servant—Private Corporation—Liability.**

In a suit against a private corporation for the death of an employee, evidence considered, and held sufficient to support a finding that the corporation was liable for the negligence of its servants causing the death.

**2.—Same—Statute Construed.**

Under the provisions of article 3017, Rev. Stats., all persons, natural and artificial, are liable in actual damages on account of injuries causing the death of any person when such injuries are the result of a wrongful act, negligence, unskillfulness or default in the performance of a duty. Hence, an electric company is responsible to its employees for negligence in having its wires properly insulated, and this, though the officers of the corporation had given orders that such work be done.

**3.—City Ordinance—Negligence per se.**

The failure of an electric company to have its wires properly insulated is negligence per se when the duty to do so is enjoined by city ordinance.

**4.—Charge—Co-defendants.**

Where there are two or more defendants a charge which instructs the jury that in the event they find against both defendants to find in favor of one over against the other, is not objectionable as intimating the opinion of the judge.

Appeal from the District Court of the 45th judicial district, Bexar County. Tried below before the Hon. J. L. Camp.

*Ogden, Brooks & Napier,* for appellant.—A private corporation of the character of the appellant, San Antonio Gas & Electric Company, is not liable for damages for injuries resulting in death, caused by negligence on the part of its employes or servants. Hendrick v. Walton, 69 Texas, 192; Fleming v. Texas Loan Agency, 87 Texas, 238; Lipscomb v. Houston & Texas Cent. Ry. Co., 95 Texas, 5; Houston & Texas Cent. Ry. v. Lipscomb, 62 S. W. Rep., 955; Coal v. Parker, 66 S. W. Rep., 135; Fisher v. Texas Telephone Co., 34 Texas Civ. App., 308.

The charge was misleading, in that it in effect told the jury that in the opinion of the trial judge the appellant, San Antonio Gas & Electric Company, was most at fault and was the active wrongdoer, and was therefore calculated to influence the jury to render a verdict against this appellant alone and to find in favor of the said Telephone Company. Galveston, H. & S. A. Ry. v. Nass, 94 Texas, 255; City of San Antonio v. Smith, 94 Texas, 267; Gulf, C. & S. F. Ry. v. Powell, 60 S. W. Rep., 980.

*H. C. Carter* and *Perry J. Lewis*, for appellee.

JAMES, CHIEF JUSTICE.—Minnie Lee Badders, the widow of Earnest N. Badders, for herself and as next friend of their children, brought this suit against appellants, The San Antonio Gas & Electric Company and the Southwestern Telegraph & Telephone Company, for damages for the killing of Earnest N. Badders, a telephone inspector in the employ of the latter company, on or about June 5, 1905.

The petition alleged his duty to ascend one of the poles for the purpose of loosening and uncrossing wires and while so engaged in order to reach the Telephone Company's wires he passed in close proximity to or came in contact with the wires of the said Gas & Electric Company which were stretched on the sides of the said pole of the Telephone Company. The said Gas and Electric Company's wires conducted a powerful, dangerous and deadly current of electricity of about 2,200 volts, and they were strung alongside the pole of the Telephone Company several feet under its wires and in such manner and proximity that a person ascending the pole had to come in close proximity or in contact with them, and that at a point near the pole the electric light wires were uninsulated and wholly uncovered so that the current would pass to the body of one climbing the pole. That the said Gas & Electric Company was negligent in having and permitting the wires to be placed and maintained in such position uninsulated; and that the Telephone Company was negligent in having and permitting the Electric Company to have and maintain its wires along its pole and in permitting same to be uninsulated. That while ascending said pole to attend to the telephone wires, the said Badders, without knowledge or notice of the danger so created, came in close proximity to and in contact with said wires and received the shock which caused his death.

The petition further alleged that there was in force a city ordinance regulating and governing the construction and maintenance of wires for conducting electricity, which enacted, in substance, that live wires must have an approved weather or rubber insulating covering, and be so spliced or joined as to be both mechanically and electrically secure without solder, and the joints must then be soldered to insure preservation and covered with an insulation equal to that of the conductors; and that wires must be so placed that moisture can not form a cross connection between them, not less than a foot apart and not in contact with any substance other than their insulating supports; and it was alleged that a violation of this ordinance was made a misdemeanor and punishable. The petition alleged the violation of the ordinance in that the wires did not have an approved weather or rubber insulating covering and at a point near the pole did not have any covering or insulation at all, that said wires were not placed more than a foot apart, etc.

The Gas & Electric Company pleaded general denial, also that deceased came to his death by an accidental fall, also through his contributory negligence. Also that it occurred from the negligence of the Telephone Company in permitting its pole to lean over,

instead of being kept in a perpendicular position, which caused its wires to be brought into contact or dangerous proximity to the defendant's wires; also that the shock, if any, was received by deceased from one of the Telephone Company's guy wires which it had negligently allowed to come in contact with this defendant's voltage wires. Also, the city ordinances requiring telephone poles to be perpendicular and guy wires to be amply protected, and alleged a violation thereof and prayed for recovery over against its codefendant, if held liable.

The defendant Telegraph & Telephone Company pleaded general denial, contributory negligence and assumed risk. That its poles and wires were in good condition, and that the Gas & Electric Company had caused its heavy voltage wires to straddle this defendant's wires and had left two naked joints on same side of said pole which would shock and kill anyone coming in contact therewith. That said wires had been so placed and left without its knowledge. That it was not the active wrongdoer, and that its codefendant was the cause of the injury, and prayed for judgment over. By supplemental answer the Telephone Company denied that its pole was out of perpendicular and denied that its guy wire came in contact with a voltage wire.

Plaintiff by supplemental petition alleged that if the guy wire was in such position as alleged by the Electric Light Company then such defendant was negligent in permitting it to be so.

There was a verdict in favor of plaintiff against the Gas & Electric Company for $16,000.

Appellant's first assignment of error is that the court refused to instruct the jury to return a verdict in its favor. The proposition is that the undisputed evidence shows that if there was any negligence causing the death of Badders, it was the negligence of appellant's servants, and not negligence of the corporation.

The second assignment, which complains of a paragraph of the charge, repeats by propositions the same contention in this form that the undisputed evidence shows that the joints were left bare and uninsulated by its linemen Kuhlman and Henry and appellant is not liable under the law to appellees for such act on the part of its servants.

There is little, if any, conflicting testimony. It appears that both companies had their poles on the same side of the street, and appellant's wires were strung along a street in the city of San Antonio about ten feet below the telephone wires. Appellants had two high voltage wires strung on either side of the telephone pole, close to the pole and both were uninsulated eight to ten inches from the pole, the bare and uninsulated places were from eight to ten inches in length. These wires were highly charged, and deceased, an employe of the Telephone Company, while ascending the pole in the performance of his duties came in contact with said exposed parts and was killed. It also appears that from six to ten weeks previous these wires had burnt out by coming in contact with the pole, and a man sent to make temporary repairs, who got them so they would run that night and left an order for the linemen to fix them per-

manently. The next day Kuhlman and Henry, linemen, were sent to do this work. Kuhlman testified: "We found them in bad condition with a lot of slack in them, seems where some one had been up there and fixed them temporarily. We pieced them out and transferred them around the guy that was holding the telephone pole. I got on the telephone pole and pieced them out and Mr. Henry drew them over to the Gas & Electric Company's pole and tied them on there and intended to solder and fix them up—these joints— about 14 or 16 inches away from the telephone pole, on the north side, but it had been raining. That is why we left them to be taped, soldered and insulated at some future date and we just neglected it, that is all." etc. Henry testified that they did not solder tape the joints, and did not go back there afterwards, just neglected it. Kuhlman had the order, marked it O. K. and turned it in.

Kuhlman testified he didn't know that the Company had any one to look after things of that kind and see that high voltage wires are not left exposed. Henry testified that he never told the line foreman about it, that it was his duty to see that it was properly done, that his orders were carried out, but he was not with them at the time. The foreman testified that he sent out the linemen to do this work but did not know how they had done it until after the death of Badders. He stated also that he went to the scene of the accident the next morning and from his buggy saw but two uninsulated joints just north of the telephone pole. As Kuhlman and Henry stated they left four joints, two north of the telephone pole and two near the Gas Company's pole, appellee states it as a fair inference that those at the Gas Company's pole had been in the meantime insulated. The defendant's superintendent testified that the foreman would give the linemen a card indicating the 'work to be done, that he did not inspect the work to see that it was properly done and did not know any further about the work except what the card told him. That the foreman owed no duty to see that the work was properly done and did not go around after the men to see that it was properly done. The ordinance of the city as set forth in the petition was established.

The above forms substantially the testimony, upon which appellant contends that there was no negligence or default of appellant itself. In other words, that the act which caused this death was solely the act of its employees, for which it is not made responsible by article 3017, Revised Statutes. We are of opinion that the claim is not well founded. The second clause of said article provides that actions for actual damage on account of injuries causing the death of any person may be brought when the death is caused by the wrongful act, negligence, unskilfulness or default of another. This reaches all persons and private corporations. It was a duty imposed by law upon appellant to have its wires to which the public, or persons whose duties called them in proximity to them would be exposed, insulated. This was held in Standard Light & Power Company v. Muncey, 33 Texas Civ. App., 416, in a case where there was no statute or ordinance expressly imposing the duty. The duty was held to be one which the company could not divest itself of.

To the same effect is Citizens Tel. Co. v. Thomas, 17 Texas Ct. Rep., 532. In both cases the Supreme Court refused a writ of error.

The testimony here was amply sufficient to establish negligence or default of appellant in respect to its duty to have its wires insulated. In Joyce on Electric Law, sec. 445, it is stated that "a company maintaining electrical wires over which a high voltage of electricity is conveyed rendering them highly dangerous to others, is under the duty of using the necessary care and prudence at places where others may have the right to go either for work, business or pleasure, to prevent injury. It is the duty of the company under such conditions, to keep the wires perfectly insulated and it must exercise the utmost care to maintain them in this condition at such places." But applying the test of ordinary care, the evidence here is sufficient. The defective and dangerous condition of the wires in question at a place where employes of the Telephone Company would in the course of their work be called, continued for months, and until Badders met his death. Appellant says that it had sent out competent linemen to repair the wires and put them in proper condition, including insulation, and that these men reported the work done; that it had no notice to the contrary until Badders was killed, and that in this it exercised all the care that was required of it. The contention of appellant might be sound, if while the linemen were engaged in repairing the wires, some act of theirs had caused the death of a person. But they were not working with the wires when Badders was killed. Their work was ended, and it was the condition in which they left the wires, and the allowing of them to remain in that condition, which was the cause of his death. If the duty was imposed on the company to exercise ordinary care with respect to maintaining its said dangerous wires in a safe condition, it was not error of which appellant can complain for the court to submit to the jury the question of its negligence in permitting such conditions to exist for so long a time relying altogether on the report of its employes. It would be a proper consideration whether or not some inspection from time to time of its lines (which in this instance was not attempted) was called for in the exercise of the proper care in the discharge of this character of duty. Certainly a delay of so long a time in discovering and remedying such condition of its wires would indicate negligence or default.

The failure of appellant to have the wires insulated was by reason of the ordinance negligence *per se.* The duty of their proper maintenance was expressly imposed on appellant and we hold, in accordance with the cases above cited, that the fact that the dangerous condition of the wires was due to its employes failing to finish their work and leaving it in a dangerous condition, does not detract from its character as the act or omission of appellant itself.

The third assignment complains of the refusal of this instruction: "You are instructed that the defendant, the San Antonio Gas & Electric Co., is not responsible to plaintiffs for the negligence, if any, of its servants, Kuhlman and Henry, or either of them, in leaving the joints on its wires just north of the telephone pole, bare and uninsulated at the time they repaired the same, and in arriving

at your verdict you will not consider the said act of said servants or either of them in leaving said joints bare and uninsulated at the time they repaired the same." What has been said is against the propriety of this charge. It would virtually have given the jury to understand that appellant was not responsible in this case for allowing the wires to remain in the condition they were left in by Kuhlman and Henry.

The fourth assignment complains of this paragraph of the charge: "In the event you should find in favor of the plaintiffs against both the defendants, then I charge that you find a verdict in favor of the Southwestern Telegraph & Telephone Co., for the amount that you find in favor of the plaintiffs, against the defendants." As the jury found only against the Gas & Electric Company, the only proposition that could avail appellant anything is that by this charge the judge told the jury that in his opinion the Gas & Electric Company was at fault and was the active wrongdoer, and was therefore calculated to influence the jury to render a verdict against appellant. The charge simply told the jury that as between the defendants, one was responsible to the other, in case plaintiff was allowed a recovery against both. The charge had no reference to any finding as between plaintiff and defendants and that matter was left entirely to the jury. No jury of common understanding could have been misled as the proposition charges.

We take occasion to state here that the assignment of error refers to said charge as one requested by defendant. This does not appear to have been so from the record, and counsel for both parties have filed with us an agreement showing such reference to have occurred through inadvertence in the preparation of the assignment, and we have so dealt with it.

The sixth and seventh assignments go to the overruling of the motion for new trial because the verdict was contrary to the law and evidence, in that there was no evidence to show that appellant was guilty of any negligence as distinguished from that of its employes. This we have already disposed of.

The seventh is that the court gave no charge on the issue of non-liability of appellant for the negligence of its servants as distinguished from its own negligence; such issue being called to the court's attention by a special charge. The special charge referred to was evidently the one disposed of under the third assignment as properly refused.

The question was whether or not there was any negligence or default on the part of appellant causing the death of Badders. This was submitted. A charge distinguishing between acts of the employes and acts of the corporation, would, it seems to us, have been improper and misleading, on the testimony in this record.

*Affirmed.*

Writ of error refused.