**A. L. JEZEK, Appellant,**

v.

**TEXAS POWER & LIGHT COMPANY,**
Appellee.

No. 3288.

Court of Civil Appeals of Texas.

Waco.

July 25, 1955.

Rehearing Denied Sept. 29, 1955.

Pat Beard, D. B. Kultgen, Waco, for appellant.

Bryan, Maxwell, Bryan & Wilson, Waco, Burford, Ryburn, Hincks & Ford, Dallas, for appellee.

TIREY, Justice.

Appellant brought this suit grounded on negligence against the appellee, Texas Power & Light Company, a corporation, and the West Fair & Rodeo Association, a corporation, to recover damages for injuries resulting in death sustained by his minor son. At the close of plaintiff's evidence the court granted appellant's motion to dismiss the West Fair & Rodeo Association and the Power Company's motion to

discharge the jury and render judgment in favor of the Power Company. Appellant seasonably perfected his appeal to this court.

The judgment is assailed on what appellant designates as four points. They are substantially: (1) that the evidence was sufficient to tender the issue that Dick Jezek was an invitee of the Power Company at the time he was hanging banners for the Fair and Rodeo; (2) that since the evidence is without dispute that the Power Company's lines were placed on the utility poles in violation of the statutes governing spacing and height, said conduct being negligence as a matter of law, the Power Company cannot claim or invoke the doctrine of trespasser or licensee against Dick Jezek, the deceased, and the negligence of the Power Company in permitting its dangerous wires to be maintained in violation of the spacing and height provisions of arts. 1436 and 1436a, Vernon's Ann.Civ. Stats. tendered the issue as to whether such negligence was a proximate cause of the injuries sustained by deceased and the resulting damages to the plaintiff; and (3) under all the evidence, facts and circumstances surrounding the accident sustained by Dick Jezek, he was not guilty of contributory negligence as a matter of law when he climbed the utility pole to hang a banner advertising the Fair and Rodeo.

The Power Company's counter points are substantially to the effect: (1 and 2) that the evidence shows conclusively that the deceased was a trespasser, or at most, a mere licensee, and that the only duty owed to him by appellee was to refrain from wilfully or wantonly harming him, and that the evidence showed that appellee did not do so; (3 and 4) that the evidence conclusively shows that deceased was guilty of contributory negligence as a matter of law, and that the condition of the power line contacted by deceased was open and obvious, and that deceased had been repeatedly warned as to the dangerous condition, and that appellee owed no duty to protect deceased against the dangerous condition that was obvious and reasonably apparent and known to the deceased. We

are not in accord with the views above expressed by appellee.

■ A comprehensive statement is necessary. Evidence was tendered to the effect that at about 10:00 p. m. on a summer evening deceased was electrocuted by touching the Power Company's live wire while hanging a banner. This wire was suspended from a utility pole belonging to the Southwestern Bell Telephone Company 20 feet above the street and 36 inches above the telephone cable also attached to the pole. The deceased was sitting astride the telephone cable and in some manner not shown by the evidence, his hand came in contact with the live wire. He cried out for help, but before his friends could release him from the wire and get him to the ground, he was unconscious, and before medical aid came, he was dead. The deceased climbed the pole in order to hang a banner advertising the West Fair & Rodeo Association. The Association was a civic enterprise, in which most of the prominent citizens of the community participated. It had been sponsored for several years (the exact time in dispute) and it was accustomed to advertise the rodeo by means of banners strung across the streets of West from the utility poles. The Power Company's only representative in the City of West knew of the practice and had offered to help with the work. The Power Company had never made any objection to this use of the utility poles. In fact, it made a practice of allowing such use as a matter of public relations. The pole in question was equipped with climbing spikes. The live wire appeared to be insulated. The insulation on it was of such character that one of the Power Company's employees testified to the effect that he "would assume to be sufficient to prevent electricity passing into the hand of a person touching the wire, under conditions prevailing at the time when deceased was electrocuted." The wire carried 110 volts and had a small bare spot next to the utility pole. The Fair and Rodeo used electricity furnished by the Power Company for power purposes.

Mr. Nemecek, an eye witness, testified in part:

"Q. What was he doing up there? A. He tied a rope the banners were on, and he tied the banners and he started—when I saw it, he was trying to climb down the pole, and I turned, I was going to my car because I intended to leave there, and the first thing I noticed there was a call for help, and I turned and faced him, and he had his hand up about like that, touching the wire with his hand. I told him to turn it loose, and he said 'I can't.' And that was all.

"Q. Well, I was with the boys on the street. Some of the banners were twisted up and they used my pickup in order to unravel those banners, and I cautioned the boys to use a stick to unravel the banners, there was some wires there, and they could be live wires, I didn't know for sure, and they left me. I was talking to the nightwatchman there, and they left me and they were going down the street there to put up a banner. I told them it wouldn't be necessary to put any banners up down there, but yet they did, so they just picked up and left me standing there on the street, left in my pickup. In the meantime my wife came up town. I drove on down the street there and stopped there, so they were already—my nephew, Walter Kubala, was out in the street holding the banners to tie to the opposite side of the street to the pole, and he told Dickie, he said, 'you hold it, I'll go up and tie it on the other pole.' I told him to use a ladder, and he said 'No, that wouldn't be necessary, we can climb that pole', there were cleats on them, or pole bolts, whatever they call them, so Dickie climbed the pole. I went back across and warned the boys about the wires, and I went back to my car; and I mentioned to the boys, I says, 'boys, when you all get through, bring the pickup up to my house, I am leaving', so I just turned around and

saw him tying the rope up there and was just fixing to leave * * *

"Q. Tell the jury whether or not you assisted in any way with respect to watching out for traffic while a part of the banner was down in the street; A. Yes, I was, I was up the street there, I stood off to the side. I wasn't there with the boys really, I was up on the corner where they were unraveling some banners; the police was standing there and were just standing there talking. * * *

"Q. Did you actually see Dick Jezek at the time he came into contact with the wire? A. No.

"Q. What was Dick Jezek's body resting on as he did his work up there on that pole? A. He had his leg crossed over the telephone pole. * * *

"Q. Did you actually see the boy when he first came in contact with the wire? A. No, not until I turned around. I was intending to get in my car and leave, and when he called for help I turned around and saw it. I didn't think anything of it because the boys, they were cutting up all the time, I didn't give it much thought to really what happened. Of course when I realized then what was happening, I came back to my car and started across the street where Walter Kubala was. * * *

"Q. What part of Dick Jezek's body was touching the wire in question here? * * * A. The right hand. * * *

"Q. Did he appear to be sitting on the telephone cable or did he just have a leg over it? A. When he tied this rope up here he was like he was sitting and he was fixing to move his leg over when the accident happened.

"Q. Will you point out for me the wire which Dick Jezek touched and from which the electricity that killed

him there emanated? A. Well, it was one of those wires right in here (indicating) * * *

"Q. Was that the lower of the three wires? A. It looks like the lower one there, I don't know, but it was one of those wires there.

"Q. Well, I will ask you to state whether or not it would have been one of the lower ones? A. Well, it could have, I couldn't say offhand, on that picture there.

"Q. Tell the jury, if you know, whether there was any power line below the one which Dick Jezek touched and from which he was electrocuted? A. No, not as far as I know.

"Q. Tell the jury, if you know, how far back from this insulator or connector here the boy's hand appeared to be to you. Did you see that? A. Well, I couldn't tell very well just offhand; it wasn't too far from there; it was about like this (indicating); I imagine it was somewhere in here.

"Q. Can you tell us approximately how many inches you think that would be? A. Well, I wouldn't know.

"Q. State whether or not the hand was on the connector here, or whether it was on the wire. A. · It was on the wire."

In appellant's brief we find substantially the following statement, which is not challenged:

"Appellant's son, Dick Jezek, was electrocuted. The electricity which killed Dick Jezek came from a wire owned and operated by defendant. At the time of his electrocution, Dick Jezek had climbed upon a utility pole in the City of West, and he was sitting upon a telephone cable which was suspended from the pole. In some manner not disclosed by the evidence, his hand came into contact with appellee's wire which was also attached to the pole. Appellee's wire from which the fatal charge of electricity came was located 36 inches above the telephone cable at the pole; it was 20 feet from the wire to the sidewalk below. There was some sag in appellee's wire as it left the pole. There were climbing spikes on the utility pole in question.

"The utility pole was owned by Southwestern Bell Telephone Company. Appellee's wire was attached to the pole pursuant to a contractual arrangement between it and Southwestern Bell Telephone Company. The terms of the contract are not in the evidence.

"Dick Jezek was upon the pole for the purpose of hanging a banner advertising the rodeo to be held by West Fair & Rodeo Association. West Fair & Rodeo Association is a civic association in the City of West. Most of the prominent people in the City of West are affiliated with it. West Fair & Rodeo Association was a customer of appellee. Appellee maintains a system in the City of West for the distribution of electric power. West Fair & Rodeo Association had hung banners advertising its annual rodeo from utility poles in the City of West for several years prior to the time when Dick Jezek was electrocuted.

"J. A. Snelson was appellee's only representative living in the City of West at the time Dick Jezek was electrocuted. He was appellee's local representative, and his duties included connecting and disconnecting, taking care of 'gripes' and keeping people 'in a good humor about everything.' Snelson knew of the practice of attaching West Fair & Rodeo Association banners to utility poles in the City of West. He had never protested against the practice or done anything to stop it; no protest had ever been made to the President of the West Fair & Rodeo Association concerning the practice. Snelson had on one occasion offered to assist in hanging the banners. There is no evidence in the

record with respect to whether or not permission had been granted by Southwestern Bell Telephone Company to hang banners from the pole in question. The same system of decorating is used in other cities. Appellee allows hanging of this type of banner by civic organizations as a matter of 'public relations'.

"Appellee's wire from which the fatal charge came appeared to be insulated. A small part of the wire was not insulated. Dick Jezek was electrocuted about 10:00 P.M. on a dry summer evening. The insulation on the wire in question was of a type which an experienced employee of appellee, employed to supervise the physical property of appellee and to supervise its linemen would 'assume to be sufficient to prevent electricity from passing into the hand of a person touching said wires under the conditions prevailing at the time when Dick Jezek was electrocuted.' Appellee's wire was located about 6 inches above Jezek's head as he sat on the telephone cable."

We come now to discuss the major question in this cause and that is: Under all the evidence and the facts and circumstances surrounding the death of Dick Jezek, was he guilty of contributory negligence as a matter of law? In determining this question we must be guided by the general rule that "Where the facts are controverted, or are such that different inferences may be reasonably drawn therefrom, an issue of fact is raised; it is only where the evidence is harmonious and consistent, and the circumstances permit of but one conclusion, that the question becomes one of law for the determination of the court. An issue of fact is raised 'if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff.'" Olds v. Traylor, Tex.Civ.App., 180 S.W.2d

511, 514, points 8–9, writ ref., citing Wininger v. Ft. Worth & D. C. R. Co., 105 Tex. 56, 143 S.W. 1150; Texas & P. R. Co. v. Cox, 145 U.S. 593, 12 S.Ct. 905, 36 L.Ed. 829; Brown v. Griffin, 71 Tex. 654, 9 S.W. 546; Texas & P. R. Co. v. Ball, 96 Tex. 622, 75 S.W. 4. Applying the foregoing rule and rejecting all evidence save that favorable to deceased, was deceased guilty of contributory negligence as a matter of law? It is our view that he was not. It is our view that deceased was not a trespasser under the statements and application made by our Supreme Court in Texas-Louisiana Power Co. v. Webster, 127 Tex. 126, 91 S.W.2d 302. First of all, it is without dispute that the telephone pole was the property of the Southwestern Bell Telephone Company and that the Power Company had its lines strung or attached to the telephone poles by virtue of some lease agreement not here disclosed. At most the Power Company was a tenant of the Telephone Company, and there is an absence of testimony to the effect that the Power Company had any exclusive control over the telephone poles. Certainly the evidence is sufficient to tender the issue that Jezek was on the telephone pole by the implied invitation of the Telephone Company. The property of the Telephone Company had been used for some years (the exact time being in dispute) by the community in decorating the City of West for the rodeo, and there is an absence of testimony to show that the Telephone Company or the Power Company, as far as this record is concerned, had any objection to such use being made of the Telephone Company's property in this behalf. Although the Power Company under its lease had a right to maintain its power line attached to the telephone pole, yet it had no authority under such lease to maintain its wire at a point above the ground where the wire was at the time deceased was killed by it, the evidence here being without dispute that the wire was being maintained by the Power Company at a point violating the provisions of arts. 1436 and 1436a, Vernon's Ann.Civ.Stats. (It is true that the lease agreement between the Power Company and the Telephone Company was not ten-

·dered in evidence, but a representative of the Power Company testified to the effect that for a period of several years the Power Company had had a rental agreement with the Telephone Company with reference to the poles, under which agreement they jointly used some poles that belonged to the Power Company and jointly used some poles that belonged to the Telephone Company; however, we do not believe that such agreement would alter the rule above applied).

In appellant's brief we find substantially this statement: If there was negligence with respect to the insulation, it is clear that a jury could find such negligence to be a proximate cause of Jezek's death. It is undisputed that Jezek's electrocution resulted from his touching the wire. If the wire was not insulated or was defectively insulated, surely the jury could have found that the lack of insulation or the defect in the insulation was a proximate cause of death. With respect to the question of the location of the Power Company's wire as a proximate cause, it should be noted that Jezek was sitting on the telephone cable beneath the wire immediately prior to electrocution. The wire was some six inches above his head. If it had been the statutory distance above the street (which is 22 feet, see arts. 1436 and 1436a, Vernon's R.C.S.), it would have been two feet six inches above his head; and had it been the required 40 inches rather than 36 inches above the telephone cable, it would have been 10 inches above his head (40 inch clearance is required by Rule 238d of the National Electrical Safety Code. The clearance requirements of the National Electrical Safety Code are adopted in art. 1436a, Vernon's R.C.S.). Surely a jury would have been justified on the basis of these facts in believing that if the Power Company's wire had been located as required by statute, Jezek's body could not or would not have touched it. We are in accord with these views. Moreover, we think the evidence tendered the issue that the Power Company was guilty of negligence in permitting the wire in question to be defectively insulated. Evidence was tendered to

the effect that there was a small bare spot without insulation on the Power Company's wire, located next to the telephone pole, and under all the facts and circumstances surrounding the accident it would have been difficult for Jezek to have seen this small bare spot on the wire. Since the evidence was without dispute that the pole in question had climbing spikes on it, and since the Power Company knew or should have known under all the surrounding circumstances that it was the custom at that time to hang rodeo banners from utility poles, the Power Company knew or should have known that someone, from time to time, similarly situated as was Jezek would be climbing the utility pole and would be near its wire. In Snyder, Ice, Light & Power Co. v. Bowron, Tex.Civ.App., 156 S.W. 550, point 10, at page 555, we find this statement: "It was the duty of appellant to have its wires insulated where persons whose duties called them, in proximity thereto would be exposed. That is such a duty as the appellant could not divest itself of." That doctrine was followed and applied by the San Antonio Court of Civil Appeals in San Antonio Gas & Electric Co. v. Badders, 46 Tex.Civ.App. 559, 103 S.W. 229 (writ ref.); and by the Galveston Court of Civil Appeals in Citizens Telephone Co. v. Thomas, 45 Tex.Civ.App. 20, 99 S.W. 879 (writ ref.); and by the Dallas Court of Civil Appeals in Standard Light & Power Co. v. Munsey, 33 Tex.Civ.App. 416, 76 S.W. 931 (writ ref.).

Going back to the statement of the rule in Olds v. Traylor, supra, we think the trial court's holding that Jezek was guilty of contributory negligence as a matter of law is not harmonious and consistent with all the facts and circumstances tendered in evidence and that a jury under all the evidence might have found that Jezek was not guilty of contributory negligence.

Because of the views here expressed, we think the trial court erred in assuming and holding that deceased was guilty of contributory negligence as a matter of law, and in so doing erred in discharging the jury and entering judgment in behalf of the

Power Company. We are of the further view that the factual situation here stated and discussed brings this cause within the rule announced and applied by our Supreme Court in Texas-Louisiana Power Co. v. Webster, supra. The rule there stated by our Supreme Court has not been changed. It is also interesting to note that the Webster case has been cited in foreign jurisdictions. See Earl W. Baker Utilities Co. v. Haney, Okl., 218 P.2d 621; and Virginia Elec. & Power Co. v. Carolina Peanut Co., 4 Cir., 186 F.2d 816, 32 A.L.R.2d 234, point at page 256.

Because of the views here expressed, the judgment of the trial court discharging the jury and entering judgment for the Power Company is reversed and the cause is remanded.