**TEXAS POWER & LIGHT COMPANY,**
Appellant,

v.

**A. L. JEZEK,** Appellee.

No. 3430.

Court of Civil Appeals of Texas.

Waco.

May 2, 1957.

Rehearing Denied May 30, 1957.

Bryan, Maxwell, Bryan & Wilson, Waco, Burford, Ryburn, Hincks, & Ford, Dallas, for appellant.

Beard, Kultgen & Beard, Waco, for appellee.

TIREY, Justice.

This action is grounded on negligence, and this is a second appeal. See 282 S.W. 2d 112 (n. r. e.).

The jury in its verdict found substantially (1 and 2) that the electric wire was not effectively insulated at the place where Jezek contacted it with his hand, but that such failure was not negligence; (4–A) that the Light Company knew, or in the exercise of reasonable care should have known, that the West Fair was using the utility poles in the City of West to hang banners at the time Jezek was killed; (4–B) and that it failed to object to such use; (4–C) that a reasonably prudent person situated as was Jezek on the occasion in question and under the same or similar circumstances would have believed that the Light Company had consented to the hanging of the banners on the pole; (4–D) that the Light Company benefited from the hanging of the banners on the utility poles; (4–E) that the lack of effective insulation upon the light wire where Jezek touched it was not open and obvious to Jezek; (4) that the electric wire, as it was located on the pole at the time, was not less than 22 feet from the ground at the point where Jezek came in contact with the wire; (7) that the placing of the electric wire less than 40 inches above the telephone messenger wire was a proximate cause of the injury to Jezek; (8) that the sum of $8,000 will fairly compensate the plaintiff for the death of his son; (9) that an ordinarily prudent person situated as was Jezek at the time would have climbed the pole; (11–A and 11) that at the time and on the occasion in question Jezek caught hold of the electric wire, and that an ordinarily prudent person would have caught hold of the electric wire under the same or similar circumstances; (13) that an ordinarily prudent person would not have used a ladder in tying the banner to the pole under the same or similar circumstances; (14–E) "Do you find from a preponderance of the evidence, if any, that the injuries, if any, received by Dick Jezek were not the result of an unavoidable accident? Answer 'It was an unavoidable accident' or 'It was not an unavoidable accident.'" The court in-

structed the jury as follows: "By the term 'unavoidable accident,' as used in this charge, is meant an event happening suddenly and unexpectedly and without being proximately caused by the negligence on the part of either the plaintiff or defendant." The jury's answer was "It was an unavoidable accident."

The Light Company seasonably filed its motion for judgment non obstante veredicto, which was overruled, and the court granted plaintiff's motion to disregard the jury's answer to Issue 14–E that it was an unavoidable accident. This motion was granted and the court entered judgment for plaintiff, less the deduction of $1,250, which was stipulated.

At a former day of this court a unanimous opinion was rendered reversing the judgment of the trial court and remanding the cause on the ground that the answer of the jury to the effect that it was an unavoidable accident was tendered by the evidence. In that opinion this court held: "* * * we have concluded that the evidence as a whole was sufficient to raise the issue as to whether the death of Dick Jezek was or was not proximately caused by any negligence on the part of appellant, or on the part of the deceased," and further held that "* * * since the jury found in favor of appellant on that issue, thereby presenting an irreconcilable conflict with their finding of actionable negligence on the part of appellant, we are of the opinion that the trial court erred in rendering judgment in favor of appellee." The cause is now pending on motion for rehearing and our holding on the question of unavoidable accident is now assailed.

The Light Company's fifth point of error, as originally submitted to this court, is: "The court erred in setting aside the answer of the jury to Special Issue No. 14–E and in rendering judgment for appellee for the reason that the issue of unavoidable accident was raised by the evidence and answered favorably to the appellant."

Under the Light Company's discussion of its fifth point we find substantially the following statement: The uncontradicted evidence is to the effect that deceased climbed the pole to which electric wires of appellant were affixed, straddled the pole and sat on the telephone cable which was 36 inches below the lowest electric wire and caught hold of the electric wire and was killed. The lower wire was six or eight inches or less above deceased's head after he ascended the pole; that the clearance between the cable and the lower wire as required by the National Electric Code was 40 inches. There is no direct evidence as to whether deceased took hold of the wire purposely. Pictures were introduced into evidence showing the spacing of the wires and cable on the pole and from which the relative position of a person's head to the wires on the pole may be judged as the person was sitting on the cable and also from which the relative size of the deceased may be determined. The undisputed evidence is to the effect that deceased had been repeatedly warned of the danger of coming into close proximity to the wires, and that it was extremely well lighted in the area where deceased was killed. The evidence is further to the effect that the banner was tied about half way between the telephone cable and the lower wire; that deceased had finished tying the banner and was ready to come down. There is also evidence in the record that no banner had been tied to the pole on which deceased was killed prior to the night in question. (End of appellant's statement.)

As we understand the record, there were at most only two witnesses who testified that can be regarded as eye witnesses to the events that immediately preceded the death of young Jezek.

Mr. Nemecek testified substantially to the effect that the accident happened August 12, 1953, between 9:00 and 10:00 P. M.; the weather was warm and dry; that deceased was up on a telephone pole stringing a banner to the pole; that Walter Kubala, nephew of Nemecek, was present and he and Jezek were working together and putting up banners at that particular spot; "A. Well, I wasn't up there at the time when they were stringing that banner, but I came down in my car; I drove my car down and parked my car close by there; I drove down in my car at that time." It was his recollection that they started their work around 9:00 P.M.; he warned them to be careful; that there might be some live wires there and to be careful out there doing that work and stringing the banners; that they had practically completed the job when he got around on Pine Street; that when he got around there Jezek was on the opposite side of the street from him and that Jezek took the ladder and set it up right next to the pole and tied the banner to the pole on the opposite side of the street; that in doing so he went up the ladder at that point and he tied the banner up across the street;

"Q. All right, then what happened? A. Well, he came down and was going across the street to tie the other side, and my nephew insisted that he tie the banner up there. I told him to take the ladder up there and use the ladder, and they said it would not be necessary, that there was some cleats, what they call cleats, on the pole, and it wouldn't be necessary to use the ladder, that they would climb the pole * * *

"Q. Which boy finally went up the pole? A. Dickie did.

"Q. All right, did you stay there until Dickie had gotten up the pole? A. Yes.

"Q. What happened when he got up there? A. Well, he climbed that pole and he tied the banner, and I thought he was going to climb down, and I turned and went toward my car. I was fixing to get in my car and that was when the accident happened.

"Q. All right, when was the first time that you knew that Dick was in trouble up there? A. Well, when I was getting in my car to drive off he called for help, and I turned around, I didn't think much of it at first, I thought the boy was joking in a way, they were kidding like boys do, and I didn't pay much attention to it until I turned around and he called for help, and I looked up and saw his hand up above his head, about like this (indicating) and I told him to turn loose, and he said 'I can't' and that was all.

"Q. All right. What happened after you heard that, what did you do then? A. Well, I saw that something was wrong, and I called for my wife, and I told my wife to go and call the police and get a doctor right quick.

"Q. All right, then what did you do? A. Well, I walked toward the car, and then some of the boys, I don't recollect who he was, came out—I don't know where they came from, but in a few minutes the doctor was there and the police, and they got this ladder up there, and some of the boys, I don't recall who it was, climbed that pole on the ladder and decided to take him down off the pole.

"Q. All right, was his hand hanging on that wire all that time? A. Yes.

"Q. About how long was it between the time you first heard him calling and the time they got him loose up there? A. I don't recollect how long.

"Q. You don't have any idea about that. A. No, I was excited.

"Q. Would it be five minutes? A. Probably so, something like that.

"Q. About five minutes. All right, did Dick continue to call after you first heard him calling up there? A. No.

"Q. You just heard him call out one time that he couldn't get loose. A. Yes.

"Q. Mr. Nemecek, what was the arrangement of the wires on the pole, was there a telephone cable attached to the pole? A. Yes.

"Q. Were the wires above the telephone cable? A. Yes.

"Q. Where was Dickie sitting up there when he was tying the banner? A. He was straddle of the pole.

"Q. Straddle of the pole. Was he on top of the telephone cable up there? A. Yes.

"Q. And the other wires were up above his head. A. That's right.

"Q. Were they attached to the pole proper? A. Yes, they were attached to an extension pole.

"Q. There was an extension that went up from the pole. A. That's right."

Walter Kubala testified to the effect that he was present and was engaged in helping Jezek to string the banner when Jezek met his death. He testified in part:

"Q. Will you tell us as best you can the circumstances of that occurrence? A. Well, we were stringing banners, and it was the last banner we had to tie, and we strung it across from there. I started up the side, and he said 'let me tie it.'

"Q. You started up what now? A. Started up the pole.

"Q. What kind of a pole was it? A. A light pole, it had these little old rod things on it; well, I started to climb up to tie it and he said, 'let me tie this one, its the last one,' so I said, 'all right.' I got down and he started up. He had already had it tied, and while he was up there, just joking,

he said, 'I make a pretty good pole climber.' I was fixing to pick up the rope and about that time he went to hollering that he couldn't turn loose of the wire—I guess he got hold of that wire right above him, and me and this other boy, Jimmie Snokhaus, tried to get him down. We got up there as quick as we could, but we couldn't get him loose quick enough to lower him, so finally he released his hold on the wire and we lowered him by his belt, we lowered him to the ground and they picked him up down there; and by that time the ambulance was there.

"Q. Was he dead when the ambulance came? A. Not right away I don't think.

"Q. You don't know about that, you just know he was dead shortly after that. A. Yes, sir.

"Q. Did he ever regain consciousness after you took him down? A. I don't think so.

"Q. Did you observe him up there on that pole after he hollered to you? A. Yes, I looked up, I said, 'what's the matter,' and he said 'I can't let go of the wire,' and this other boy that was there that was fixing to take him home when we got through, we ran up the pole as fast as we could and tried to get him down, but we couldn't get him loose from the wire.

"Q. Did he have a hand on the wire? A. Yes.

"Q. Can you tell us about the arrangements of the wires up on that pole, what was up there? A. Well, there was a bunch of light wires, I guess, with a telephone cable below.

"Q. But the light wires were at the top of the pole, is that right. A. Yes, sir, just like this was the telephone cable, there were two or three wires above it.

"Q. State whether or not the telephone cable was below the light wires? A. It was below the light wires.

"Q. Was the telephone cable insulated? A. I think so, it had kind of a steel covering over it, whatever you call it.

\* \* \* \* \* \*

"Q. How far would you estimate was the telephone cable below the light wires? A. I would say about two and a half feet.

"Q. Was any portion of Jezek's body touching the telephone cable? A. He was sitting on the telephone cable.

"Q. He was sitting on the telephone cable. Was his right hand touching any portion of the pole or any appliance on the pole? A. Well, at the time I believe he was using his right hand to tie the cord, the rope, and that's about all I could see. I believe his right hand then was on the wire after he got through. You see, he was wrapping the rope around the post so he could hold, and he got through and he said he was fixing to come down. I kind of believe he grabbed it with his right hand if I am not mistaken.

"Q. All right, was his other hand touching any appliance or any portion of the pole? A. I don't remember that, but I am pretty sure it was though. \* \* \*

"Q. Who started up the pole first? A. I did.

"Q. And what happened as you were going up? A. Well, you know there is these little metal things that stick out on the pole, well, I was two or three up I guess, and he told me he wanted to tie the last one, and I told him it didn't make much difference, he said he would rather do that than pick up the rope, so I got down and he went on up with the banner,

and I was picking up the rope. He was sitting up there tying, just joking around, and the next thing I know he went to hollering for help.

"Q. And I believe you and the Snokhaus boy went up there and got him down, is that correct? A. Yes, sir. * * *

"Q. At that time did you see whether or not Dickie had his hand on the lower one of those three wires? A. I couldn't be for certain.

"Q. But did he have his hand on some wire up there? A. I believe he did.

"Q. Could you see his hand on the wire, or did he say anything about not being able to turn loose of the wire? A. I remember him hollering for help, but I thought he was kidding about it, then he said 'I can't turn loose of the wire,' so he must have had hold of the wire.

"Q. Did you look to see whether he had hold of the wire or do you remember? A. Well, we got up there as quick as we could, we tried to get him off the pole.

"Q. Do you remember whether when you got up on the pole, whether he had hold of the wire or whether he didn't or do you recall one way or the other? A. I think he had already released his hold on the wire, before we got to him because he nearly slipped away from Jim and I. (Refers to Snokhaus, who was not tendered as a witness.)

"Q. Did you or not warn Dickie yourself about the danger incident to climbing in and around those wires? A. Yes, sir, several times. * * *

"Q. * * * I believe that you all had gotten pretty hot that afternoon and night doing the work that you were doing? A. Yes, sir.

"Q. And your bodies were wet with sweat. Is that correct? A. Yes, sir.

"Q. And that's one of the reasons that Mr. Montgomery warned you up there about climbing the poles with all your clothes wringing wet, in the vicinity of those wires. A. Yes, sir. * * *

"Q. Now, Mr. Kubala, you testified that you were hot and sweating out there. A. That's right.

"Q. Actually you managed to keep the palm of your hand that you were working with pretty dry, wouldn't you, and the wettest part of you would be your back and face. A. I don't think so. I believe my hands were moist, I believe I could feel moisture in my hands.

"Q. It wouldn't be wet like on your forehead or something like that? A. No, not that wet.

"Q. Had you been pretty hot since you started that afternoon? A. Yes, sir."

The record is without dispute that the pole in question belonged to the Telephone Company, and that the spikes placed in there were for the use and benefit of the Telephone Company, and the Light Company had its wires attached to the pole by virtue of a written contract with the Telephone Company. The first spike in the telephone pole was 6½ feet from the ground.

The foregoing, we believe, presents all of the pertinent evidence, including all known available facts and circumstances immediately preceding and succeeding the time that Jezek's hand came in contact with the light wire.

■ Much has been written by our appellate courts on the question of unavoidable accident as it has been used in our judicial system, and it has been a source of much confusion. It was this confusion that caused our Supreme Court to make a new

examination and statement concerning the doctrine in Hicks v. Brown, 136 Tex. 399, 151 S.W.2d 790, 792, and there we find this statement: "Because of the uncertain state of the authorities upon the question, we have had a full conference with a free discussion of the question, and have decided to hold, in keeping with the holding in the McKinney case [Missouri, K. & T. Ry. Co. of Texas v. McKinney, 136 Tex. 75, 145 S.W.2d 1081], supra, that if the evidence does not raise the issue that something other than the negligence of one of the parties caused the injuries, then it does not raise the issue of unavoidable accident." Our Supreme Court has never departed from this holding and our appellate courts have followed and applied this holding consistently. See Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407 (Tex.Com.App., opinion adopted); Texas & Pacific Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332. See also Coca Cola Bottling Co. v. Krueger, Tex.Civ. App., 239 S.W.2d 669 (no writ history); Harrison v. King, Tex.Civ.App., 296 S.W. 2d 344 (n. r. e.); Nussbaum v. Anthony, Tex.Civ.App., 214 S.W.2d 686 (n. r. e.).

■ Under the foregoing pronouncement of our Supreme Court, does the evidence tender the issue that something other than the negligence of the Light Company or Jezek caused the injuries that resulted in Jezek's death? We do not think it does.

First of all, the weather was good and there is no evidence that the weather had any influence on Jezek other than the fact that he was perspiring freely and that his clothing was wringing wet with perspiration. It is without dispute that Jezek had completed the task of tying the banner about midway between the telephone cable on which he was sitting and the light wire in question and had started to come down the pole. There is an absence of evidence to the effect that Jezek did anything to interfere with his safety before he had finished his task and had started to come down. There is likewise an absence of testimony as to why he caught the light wire with his right hand. There is no evidence to the effect that he became unbalanced on the cable on which he was sitting, nor is there any testimony to the effect that his foot slipped as he attempted to arise from the position where he was sitting on the cable in order to descend the pole, nor is there any evidence that his hand caught the wire before he started and after he started coming down the pole, nor is there any evidence of a sudden emergency of any nature whatsoever happening to or near Jezek that caused him to reach for the light wire. Absent the wearing and breaking of the insulation (such not being open and obvious) on the light wire where Jezek's hand came in contact with the light wire, he would not have suffered any injury under all of the facts and surrounding circumstances. Since the maintenance of the light wire at the place in question was negligence as a matter of law, could the accident to Jezek under all of the evidence and surrounding circumstances have been unavoidable under the circumstances here detailed? We think not.

In Menefee v. State, 129 Tex.Cr.R. 375, 87 S.W.2d 478, 480, our Court of Criminal Appeals, speaking through Judge Krueger, said: "An accident which could have been avoided by a compliance with the law will not be deemed unavoidable." This court in its former opinion held that Jezek was not guilty of contributory negligence as a matter of law in doing the things he did do, and our holding in that respect became the law of the case. We see no reason to change our view in this respect under the evidence here tendered. When Jezek completed his task of tying the banner and started down, the only negligence tendered by the evidence under all of the facts and surrounding circumstances was the negligence as a matter of law of the Light Company in maintaining the wire in the position it was in at the time. As stated before, there is an entire absence of direct evidence, as well as under the facts and surrounding circumstances, showing how or why Jezek's right hand caught the light

wire. Of course, we could presume that he became unbalanced on the wire, or that his foot slipped when he started to change his position and descend and that in desperation he caught hold of the wire, forgetting that it was a light wire, in order to save himself, but this would be building presumption upon presumption. We could with as much certainty presume that he saw that the wire was insulated and that he did not see the wearing or breaking in the insulation and that he purposely caught the wire with his right hand while rising or before rising in order to make his descent on the pole. Being of this view, we think the trial court correctly disregarded the jury's finding on unavoidable accident, and this view will require us to grant appellee's motion for rehearing and affirm the judgment of the trial court.

Going back to a consideration of all the evidence and circumstances surrounding Jezek immediately preceding the tying of the banner, and subsequent to the time he started to descend the pole, we think the answers of the jury are consistent and harmonious (except the jury's answer to unavoidable accident) with Judge McDaniel's view, wherein he held that the issue of unavoidable accident was not tendered by the evidence. And going back to the rule in Texas, unless it was so tendered, the jury's answer thereto becomes immaterial. We have again reviewed the decision of this court in Mohan v. Safeway Stores, Tex.Civ.App., 237 S.W.2d 813 (no writ history) and we do not think that our views here expressed are in conflict with those expressed in the Mohan case, supra.

Appellant has filed herein original motion and amended motion for rehearing. In view of the disposition we are today making of this cause, in that we have by separate order withdrawn the original opinion and substituted this opinion therefor, all action on appellant's motion and amended motion for rehearing is held in abeyance and appellant shall have fifteen days from this date within which to file such amended motion or motions as it sees fit.

Accordingly, the judgment of the trial court is affirmed.

HALE, Justice (dissenting).

I respectfully enter my dissent to the judgment and opinion rendered and handed down in this cause, affirming the judgment of the court below, because I believe the evidence in the case raised the issue of unavoidable accident.

The evidence shows that Dick Jezek had climbed a pole to which electric wires of appellant were fixed, straddled the pole and set on a telephone cable which was thirty-six inches below the lowest electric wire, and caught hold of the electric wire and was killed. The lower wire was something like six or eight inches above the deceased's head after he ascended the pole. The requisite clearance between the cable and the lower wire, as required by the National Electric Code, was forty inches. There is no direct evidence as to whether the deceased did or did not take hold of the wire purposely. Pictures introduced into evidence showed the spacing of the wires and cable on the pole, and from which the relative position of a person's head to the wires on the pole might be judged as the person was sitting on the cable, and also from which the relative size of the deceased might be determined. The undisputed evidence shows that the deceased was warned of the danger of coming into close proximity to the wires, and that the area where the accident occurred was well lighted. The evidence also indicates that a banner was tied about half way between the telephone cable and the lower wire, and that the deceased had finished tying the banner and was ready to come down when the accident occurred. There was also evidence that no banner had been tied to the pole on which the deceased was killed prior to the night of the accident.

In passing upon the question as to whether or not the evidence raised the issue of unavoidable accident, it is our duty to review the evidence as a whole and all reasonable inferences that may properly be drawn from the same, in the light most favorable to the contentions of appellant. An unavoidable accident, as said by the Supreme Court in the case of Dallas Ry. & Terminal Co. v. Bailey, 151 Tex. 359, 250 S.W.2d 379, 385, is: "an event not proximately caused by the negligence of any party to it." Reasonable foreseeability, being an essential element of proximate cause, is also an essential element in the issue of unavoidable accident. Holland v. De Leon, Tex.Civ.App., 118 S.W.2d 489 (er. ref.); 30 Tex.Jur. p. 349 et seq., Secs. 121 and 122 and authorities. Although the question here presented is not entirely free from doubt, I believe the evidence as a whole was sufficient to raise the issue as to whether the death of Dick Jezek was or was not proximately caused by any negligence on the part of appellant, or on the part of the deceased, and that if such issue was so raised, then the issue of unavoidable accident was necessarily raised by the evidence in this case.

In the case of Dallas Ry. & Terminal Co. v. Darden, Tex.Com.App., 38 S.W.2d 777, 779, the Court said:

"It is impossible to announce a fixed rule applicable to all cases by which it can be decided just when the issue of unavoidable accident is presented. In order to determine whether such issue is involved, the facts of each particular case must be examined with the view of ascertaining whether there is present a theory under which the accident could have happened, notwithstanding all the parties to the transaction exercised the degree of care required by law."

I think such theory is presented by the evidence in this case. Although the undisputed evidence shows that the deceased grasped the live wire by which he was killed, it does not show that he did so as a result of meditation or design on his part, and we cannot assume that he did so, because the evidence shows as a matter of law that he had been warned of the danger of coming in contact with the wire, and we must presume from the evidence, in the absence of conclusive evidence to the contrary, that he was exercising ordinary care for his own safety. While appellant was negligent in maintaining its wire at a height of thirty-six inches above the cable rather than forty inches, as required by the National Electric Code, it does not follow inexorably that appellant could have reasonably foreseen or anticipated, under the facts and circumstances in evidence, that its failure to so maintain its wire would result in injury to the deceased. I think the jury could well have found from all the evidence that the deceased lost his balance just before descending to the ground and that, in the emergency of his hazardous position, he suddenly caught hold of the wire in order to keep from falling, and that he would have done the same thing even though the wire which he grasped had been maintained forty inches above the cable, rather than thirty-six inches. In other words, the mere four inches of difference in the height at which the wire was maintained above the cable was not necessarily the cause or the most probable cause of the fatal accident, and hence appellant was not required, as a matter of law, to anticipate and foresee any such fatal consequences.

Since the evidence as a whole was, in my opinion, sufficient to raise the issue of unavoidable accident, and since the jury found in favor of appellant on that issue, thereby presenting an irreconcilable conflict with their finding of primary negligence on the part of appellant, it is my view that the trial court erred in rendering judgment in favor of appellee. Colorado & So. Ry. Co. v. Rowe, Tex.Com.App., 238 S.W. 908; American Glycerin Co. v. Kenridge Oil Co., Tex.Civ.App., 295 S.W. 633; Hudgins v. Kansas City M. & O. R. Co., Tex.Civ.App., 2 S.W.2d 958 (er. ref.);

Humble Pipe Line Co. v. Kincaid, Tex.Civ. App., 19 S.W.2d 144 (er. ref.); Dallas Ry. & Terminal Co. v. Garrison, Tex.Com.App., 45 S.W.2d 183; Blanton v. E. & L. Transport Co., 146 Tex. 377, 207 S.W.2d 368; West Texas Utilities Co. v. Harris, Tex. Civ.App., 231 S.W.2d 558 (er. ref. n. r. e.); Heynes v. Martinez, Tex.Civ.App., 260 S. W.2d 369 (er. ref. n. r. e.).

I would reverse the judgment appealed from and remand the cause to the court below for another trial.